No. 11,194.

J. U. PAYNE, JR., VS. JAMES & TRAGER.

Overflows in the past history of this State have been of frequent occurrence, and they are therefore not of such "extraordinary nature that could not have been foreseen."

The destruction of the crops by them is not a sufficient cause for the abatement of the rent, but they are unavoidable accidents, within the meaning of Article 2719, Civil Code, and relieve the tenant from repairing damages caused directly by them.

In a suit for damages the plaintiff must prove his damages with legal certainty.

Where the testimony is conflicting we will not disturb the judgment of the lower court without a manifest injustice has been done.

Before a party can resort to prove what disposition was made of property seized, he must first show that it was legally sold under an order of court, by agreement of the parties, or under a *fi. fa.*, and the loss or destruction of the authority under which it was disposed of.

APPEAL from the Thirteenth District Court, Parish of West Feliciana. *Brame, J.*

*Montgomery & Lawrason* and *Harry H. Hall* for Plaintiff and Appellant:

1. Vague and uncertain allegations of damages, without specification or detail, do not authorize proof. 42 An. 890; 37 An. 492.

2. If one demand less than is due him, and do not amend his petition in order to augment his demand, he shall lose the overplus. C. P. 156; 14 La. 140; 25 An 223.

3. Stipulations in a contract of lease must be construed with reference to the laws which govern the main contract and the subject matter. 36 An. 893; 84 U. S. 53, 68.

4. The Civil Code of Louisiana, following the civil laws of Rome, Spain and France, and differing from the common law, regards a lease for years as a mere transfer of the thing leased, and holds the landlord bound, without express covenant, to keep it in repair· * * * even when the want of repair or the unfitness is caused by an inevitable accident. 120 U. S. 707.

5. The breaking of a crevasse in the levees by the waters of the Mississippi river is a fortuitous or unforeseen event, within the meaning of the Civil Code of Louisiana, and a tenant is not responsible for damages occasioned by floods from the crevasses.  120 U. S. 707; R. C. C. 2693. 2711, 2721; 40 An. 268; 37 An. 532.

6. Plaintiff is liable for value of property seized by sheriff and not accounted for. 4 R. 41; 17 An. 21.

*W. W. Leake, R. C. Wickliffe* and *S. J. Powell* for Defendants and Appellees. .

The opinion of the court was delivered by

McEnery, J.   The plaintiff sued the defendants *in solido* for $5000, as damages on a contract of lease for failure to return the leased property in the condition in which it was at the time defendants took possession, under the lease of said property.

Plaintiff alleges a deterioration in the value of said leased property in the amount above stated, caused by defendants' violation of their obligation under the lease in not keeping in good order the ditches, buildings, fences, and for general neglect in permitting the plantation to go to decay.

The defendants answered, averring that the demand of plaintiff was too vague, general and insufficient, and that they could not answer specifically said vague allegations.

They also aver that the plaintiff took possession and control of said leased plantation three years before the expiration of their lease, and leased said plantation to other parties, for whose actions defendants are not responsible; that having collected for each year from said new lessees $600 to $700, the defendants were sued and made to pay the difference of their rent notes and amount collected from the new lessees by plaintiff suing in the United States Court in the name of his brother, C. M. Payne; that if any damage was suffered it was occasioned by the removal of defendants, and during the occupancy of the new lessees under control of plaintiff. They prayed for the dismissal of plaintiff's demand and a trial by jury.

With this answer they filed a reconventional demand, claiming damages for the malicious prosecution of the suit.   On these issues the case was referred to a jury, which resulted in a mistrial.   After this trial defendants filed another reconventional demand for $12,-000, for property of the defendants alleged to have been seized by

plaintiff under a writ of provisional seizure and unaccounted for by him.

On the second trial, without the intervention of a jury, there was judgment dismissing plaintiff's demand, and dismissing defendant's reconventional demand, as in case of non-suit.

The plaintiff and defendants appealed from the judgment rejecting their respective demands.

In his petition plaintiff avers that the defendants, "in violation of their obligations to keep said leased premises, including all buildings, fences, ditches, improvements, etc., in good order and repair, during the continuation of said lease, and at the expiration thereof to surrender the same to petitioner in like good condition, order and repair, in which they acknowledged to have received the same, wantonly and with total disregard of plaintiff's rights, and of their obligations under their said contract, failed to maintain said premises, buildings, etc., in good order and repair; but, on the contrary, permitted the said plantation to run to waste, and the buildings and improvements to become dilapidated, and the fences to fall, and the ditches to become choked and obliterated."

He further avers, "that on the 15th January, 1886, by notarial act before Guyol, he sold the said plantation subject to said lease, and with full reservation to himself of the right to collect the rent due for his own benefit, and also to sue for the recovery from the said James and Trager of all damages which the said plantation should have sustained while in their possession, according to the terms of the lease; that the price paid for said plantation was $15,-650, being the full value thereof in its wasted and dilapidated condition; had said plantation been in like good order and condition as it was when leased and delivered to said James and Trager, petitioner could readily have sold the same for $20,000."

The demand of plaintiff is practically the loss he sustained between the difference of the price which he received and that for which he could have sold the plantation, had it been returned to him in good order and condition.

There is no evidence in the record to show that the dilapidated condition of the place influenced the purchasers, or whether they were controlled by the fact that the plantation was subject to overflow from the back part of it, where there was no levee in 1883 and 1884, and the total submersion in 1882, from both front and rear.

The estimated damages are as follows: Ditches, $1000; fencing, $1100; cabins, $600; gin, $250; dwelling, $100; amounting to $3050.

The following clause in the lease is the foundation of plaintiff's action:

" The said lessees, James and Trager, not only bind themselves *in solido* for the payment of the aforesaid notes, but also for all other obligations of his contract. The lessees further obligating themselves to keep the herein leased premises, including all buildings, fences, ditches, improvements, etc., in good order and repair, and at the expiration hereof to surrender the same to the said lessor in like condition, good order and repair, in which they acknowledge to receive the same."

This stipulation is but an affirmance of the provisions of Art. 2719, Civil Code, which requires the lessee to deliver the thing leased in the same state in which it was taken possession of by him, making the necessary allowance for wear and tear, and for unavoidable accidents.

Unavoidable accidents are those which are not attributable to the lessee or to members of his family, or to the sub-lessee. Civil Code 2721.

Article 2716, Civil Code, designates the repairs to be made by the lessee, excepts those which have been occasioned by a hail storm or by any other inevitable accident, and Art. 2717, says " the expenses of the repairs which unforeseen events or decay may render necessary must be supported by the lessor, though such repairs be of the nature of those which are usually done by the lessee."

The plaintiff contends that the several overflows, during the lease, which damaged the place, do not relieve the defendant from restoring the place in the condition in which they received it, and rely upon the decisions of this court in Vinson vs. Graves, 16 An. 162; Masson vs. Murray, 21 An. 535; and Jackson vs. Michie, 33 An. 723, in interpreting Art. 2743 of the Civil Code.

This article of the code says: " The tenant of a predial estate can not claim an abatement of the rent, under the plea that during the lease either the whole or a part of his crop has been destroyed by accidents, unless those accidents be of such extraordinary nature that they could not have been foreseen by either of the parties at the time the contract was made; such as the ravages of war extending

over a country then at peace, and where no person entertained any apprehension of being exposed to invasion or the like.'

This article applies to an entirely different condition of things, and has no application to the obligations of the lessee to make repairs. A storm might sweep over the place and destroy the crop and blow down the houses. The tenant could not obtain an abatement of the rent, for the storm was not an accident of an extraordinary nature, and it will not be contended that the lessee would have to rebuild the houses, notwithstanding his obligation to restore the place in the condition in which he received it.

The houses would, in such an event, be destroyed by unavoidable accident, without the fault of the lessee.

Overflows in the past history of this State have been frequent occurrences.

They are not of an "extraordinary nature, that could not have been foreseen, and therefore the destruction of his crop by them is not sufficient cause for the abatement of the rent. But they are unavoidable accidents, brought about without the aid or procurement of the lessee, and as such relieve him from making repairs caused directly by them.

The testimony shows that the leased premises were entirely overflowed in 1882, soon after the lease was executed, partially in 1883, and to a much greater extent in 1884. The damages to the place are attributed entirely to these several overflows, one witness only stating that it was due to the overflow and the bad management of defendants. But he does not specify in what manner this bad management damaged the plantation.

In substance the testimony is as follows: witness for plaintiff, L. P. Laudram, says the plantation in 1881 was in good condition. He remained on the place until August 1882, after the overflow, when he left it in bad condition. D. L. Rabalais says the place was in good condition in 1882, but does not know its condition thereafter. Francis M. Pavey says the plantation was in bad condition in 1886, caused by the overflows of 1882, 1883, 1884, and also by bad management of defendants. J. M. Rabalais describes the place as greatly deteriorated in 1886.

The barn was converted into a sugar house, damaging it to the amount of $250.

25*

The ditches were neglected during the lease and filled by water in 1882.

It would cost about $500 to put ditches in order. The cabins were greatly damaged by the overflow, and the fences were not damaged. A. B. Couvillon says the place was in good condition in 1882 and in bad condition in 1886. The buildings were in a dilapidated condition and the fences also in a bad condition.

The principal cause of the damage sustained by the place was on account of high water in 1882-1884. There were no repairs made after the overflow. The hands left the place.

The place was overflowed for two months. The current was very strong on back part, but not so strong in front—says broken and loose dirt drifted into the ditches.

In 1883 only a small strip of fencing damaged, but in 1884 damaged a great deal. The water was deep in the cabins, on the back part of the place, damaging bricks and mortar in the chimneys, and washing away the blocks under them, and the negroes left the place.

Randolph W. Foster says the plantation was in good condition when leased, and the condition of the place bad in 1883, caused by the overflow of 1882. The greater part of the fencing was down, the current having washed the pughes off, the posts up, and undermined the blocks of the houses, in many instances loosening the mortar in the chimneys. The ditches were filled up with debris, trash and logs, and it would have required a great deal of work to clear them out. The place had been abandoned, that is the greater part of it. There were few families on the place.

The gin house was out of repair. The barn was not so much injured, as it was built of stronger and better material, and not being in the current it did not receive the injury done to the other buildings. A statement by this witness is given of the damage to houses, ditches and fences, as stated above.

The plaintiff states that the damage continued from beginning to termination of lease. He does not know at what particular time any damage was done; does not know from personal knowledge that the place was overflowed, and consequently does not know the fact of the overflow, and therefore does not know whether it was damaged by overflow or not.

Witnesses for defendants testify as follows: Robt. Coca, that

the plantation overflowed in 1882 to a depth of three feet, and in 1884 to three-quarters of a foot.

T. P. Harmanson, that the place was worth more in 1882 than in 1886, and the depreciation was caused by the fact of the overflows.

Beverly C. O'Neal says to his knowledge the defendants did no damage to the plantation, but that it was damaged by overflow.

Jacob Sellers says the ditches were bad in 1882. The gin house was old; that the convicts cleared out the ditches in 1882 after the overflow. The fences were washed away by overflow, and the blocks were washed from under the houses. The fences were replaced after overflows. The place was in good fix in 1886. Crops were made and fences all up.

The defendant, Trager, says that in 1882 he spent "twenty odd hundred dollars" in ditching and cleaning on the place.

He had trees and logs cut out of them. At first convicts did the ditching, after which he hired colored people to do it. The place remained under water for two months in 1882. It was not leveed on side and rear. After the overflow of 1882 he built new fences, and with hired labor "plugged" out the ditches. In 1883 the place was partially overflowed, and in 1884 the overflow came up nearly to the front cut, to within fifty or sixty yards of the residence. The barn was converted into a sugar house by consent of plaintiff. The gin house was in bad condition when he went on the place. He had it propped so that it could be used. Portions of the machinery had to be sent to New Orleans for repairs, and the boiler had to be patched. After the overflow of 1882 he bought lumber and built two cabins, and repaired all the other cabins that required it. Mr. Payne, plaintiff, when he applied for an annulment of the lease, told him to go on and do the best he could. In 1883 there were forty bales of cotton made on the place, and after the overflow of that year there came another in 1884, and he again went to the plaintiff to get relieved from his lease, when he advised him to put on the place one Couvillon. Couvillon cultivated the place, and shipped cotton directly for plaintiff's account for the amount due for rent.

Couvillon did go on the plantation and was furnished supplies by plaintiff, to whom he shipped cotton. But it will not be necessary to discuss the effect of this change in the management of the plantation.

It does not appear, however, that the plaintiff accepted him as the lessee of the place.

The demand for damages is *in globo*, the plaintiff claiming the sum of $5000, without specifying in any way the manner in which the defendants have injured him.

The proof that the depreciation in the value of the place was owing to the fault of the defendants is unsatisfactory. The evidence is conflicting, and plaintiff's witnesses even do not establish the amount of damage with legal certainty.

We do not think that any passive violation of the contract has been proven, and there is an absence of any testimony as to voluntary waste on the part of defendants.

The facts are disputed. The evidence is conflicting in most essential particulars.

We have repeatedly held that on questions of fact found by the lower court that we will not disturb the judgment unless manifestly erroneous. Gilkerson Sloss Commission Co. vs. Pond & Williams, 44 An. 841.

On the first ground of defendants' reconventional demand there is no evidence whatever to sustain it.

On the second the testimony shows that the property of defendants was seized for rent. A judgment was rendered in favor of plaintiff, and the proceeds of the sale of a part of the property is credited on the rent note. The balance is unaccounted for.

Plaintiff offered to prove by parol what disposition had been made of the property. The fact that it was legally sold, either by agreement of the parties, by order of court, as perishable property, or under a *fi. fa.*. ought to have been first shown, and then the loss of the authority under which it was sold, before parol testimony could be received as to the disposition of the property. We think the judgment of non-suit was properly rendered on the reconventional demand.

The facts upon which the reconventional demand is based do not bring it within the provisions of Arts. 3536, 3537, to which the prescription of one year will apply. Judgment affirmed.