Stewart & Stewart and Hall & Jack, for appellant.  W. R. Percy, for appellee.

MONROE, J.  This is a suit to enjoin the collection of parish taxes, for the years 1908 and 1909, on a certain tract of land and certain machinery, from and with which gravel is being obtained; the ground relied on being that plaintiffs are conducting "mining operations," within the meaning of the provision on that subject of article 230 of the Constitution.  The suit is brought by the "Jarrett Construction Company * * * and Ernest R. Bernstein, liquidator of said partnership."  The evidence shows that the title to the land stands in the name of Ernest R. Bernstein and Thos. E. Jarrett and that the land is so assessed and advertised.  There is no allegation or proof as to the ownership of the machinery (one steam shovel and one locomotive) mentioned in the petition.  The plaintiffs, therefore, disclose no interest, and the judgment appealed from, which is in favor of the defendant, tax collector, is, accordingly, affirmed.

---

(56 South. 902.)

No. 18,712.

CLEMENT v. LOUISIANA IRRIGATION & MILL CO.

(Dec. 11, 1911.)

*(Syllabus by the Court.)*

1. NAVIGABLE WATERS (§ 39*) — INJURIES FROM FLOWAGE—RIGHT OF ACTION.

No one has a right to maintain a dam across a navigable stream, so as to obstruct its flow and cause salt water to overflow on the land of another and stagnate, thereby causing the death of trees on the land.  This is a nuisance, and the owner of the land has an action for its abatement.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 239–244; Dec. Dig. § 39.*]

2. ESTOPPEL (§ 93*)—EQUITABLE ESTOPPEL—GROUNDS.

Where one stands by and sees, without protest, another construct a dam across a navigable stream, and appears to approve, his grounds of complaint are adversely affected thereby.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 264–275; Dec. Dig. § 93.*]

3. DAMAGES (§ 184*) — ASSESSMENT — SUFFICIENCY OF EVIDENCE.

Where one claims damages, he must prove the cause of the damages and their amount with certainty; for a judgment for damages cannot rest on mere conjecture.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 502; Dec. Dig. § 184.*]

4. PLEA OF PRESCRIPTION — SUFFICIENCY OF EVIDENCE.

Defendant's plea of one year prescription is sustained by the testimony.

5. COSTS (§ 32*)—RIGHT TO COSTS—PREVAILING PARTY.

As part of the demands of the plaintiff has been allowed, the defendant will be condemned to pay the costs of court.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 108–132; Dec. Dig. § 32.*]

Appeal from Eighteenth Judicial District Court, Parish of Acadia; William Campbell, Judge.

Action by Jules Clement, Sr., against the Louisiana Irrigation & Mill Company.  From the judgment, the plaintiff appeals.  Affirmed in part, and reversed and rendered in part.

Heinen & Modisette, for appellant.  Story & Pugh, for appellee.

BREAUX, C. J.  This action is one sounding in damages in the sum of $3,000 for the alleged destruction of timber.

Plaintiff is the owner of lands described in his petition.

There was constructed, some years ago, by a former owner, a dam below this land, which is owned and maintained by defendant, its agents and officers, which obstructs an otherwise navigable stream.  Where the dam is, the water, even in low water, is some 18 feet in depth.

Plaintiff's complaint in particular is that north of the dam there is a depression in the land, which amounts to a stream, which drains the salt water from the oil fields at Evangeline or Jennings, which cannot flow on because of the dam, but it causes the waters

to rise at the dam and spread over plaintiff's land.

That the salt water, stagnating upon this land has killed and continues to kill his valuable timber on the land, consisting of cypress, oak, and other trees of different kinds, fully worth, it is alleged in the petition, $4,000, over and above the sum demanded.

Petitioner represents that the stream closed by the dam is valuable to him for transportation and the other uses of navigable streams to those who live near them.

Plaintiff desires to have the alleged dam removed by the officers and agents of defendant company.

Plaintiff asks for judgment in addition to the sum of $3,000.

Before presenting its defense, defendant applied to the court for an order, under which plaintiff would have to prepare and file a bill of particulars of the number and kind of trees killed on the tract of land, and the date.

The court granted this order applied for, and directed the plaintiff to file a bill of particulars, which was accordingly done.

The defendant then filed its answer, denying that there was ground for the suit; that it constructed a dam across the stream, known, it seems, as the Bayou Des Cannes, but averred that it was the work of another company—the Acadia Company, its predecessor, by which the dam was constructed and for many years kept up and maintained for impounding fresh water for irrigation of rice fields along the Bayou Des Cannes; that the Acadia Company sold to the Abbott-Duson Company, and from this company, in 1904, the defendant acquired its pumping plant and appurtenances.

Defendant, it is urged, continued the pumping and irrigation just as had been done by its predecessor, and this with the assent of plaintiff.

Defendants pleads estoppel.

The defendant disclaims all responsibility for the flowing salt water of which plaintiff complains, and particularly avers that if trees were destroyed by salt water it was a destruction prior to the date that it became the owner of the irrigation plant in question.

Defendant pleads the prescription of one year in bar of plaintiff's recovery of any damages to cypress and other trees.

Plaintiff, on the trial, limited his petition to a claim for 40,000 feet of cypress, and, in view of this limit placed by plaintiff on his demand, the court overruled the motion for a bill of particulars.

In addition, plaintiff alleges in his petition that "at least 40,000 feet of good cypress, merchantable timber, has been destroyed by the salt water."

There was no necessity for a second declaration in regard to the limited number of feet destroyed.

The judge rejected plaintiff's demand for damages claimed—$3,000—and ordered the defendant to remove the dam and the obstruction across Bayou Des Cannes below plaintiff's land without delay, at its costs.

The plaintiff is condemned to pay all costs of the proceedings.

From that judgment, plaintiff appealed.

[1] There is no question but that the dam was below and south of the drain from the Jennings oil field, and that the dam constructed across the drain stops the drainage, and thereby the salt water from the oil fields is held back in the swamp at a short distance above.

The stagnant salt water in the swamps destroys the trees. It has become a nuisance, of which plaintiff has just cause of complaint.

We will not dwell at length upon the necessity of removing the dam. It is very evident that it should be removed.

We are informed by the testimony that the president of one of the companies has been found guilty in a criminal action in matter of this water and the dam.

It is equally as evident in the civil suit that the interference should be abated.

[2] The next question of moment to be considered in this case is whether damages should be allowed.

Plaintiff has not asked for exemplary or punitive damages, for the very good reason, no doubt, that he felt he was not entitled to them. His own conduct would have estopped him.

Plaintiff is one of the fortunate explorers in the Jennings oil field. On his own land, there were profitable wells drilled, and oil was stored thereon.

The salt water from the oil on his land flowed to the bayou, which was obstructed by the dam.

Furthermore, he was present when the dam was constructed in the year 1902. He saw the work going on, and never for an instant objected.

There was a sample dam constructed before the regular dam was constructed; plaintiff furnished the lumber from his sawmill to construct this sample dam.

Plaintiff, doubtless, did not find it to his interest to object. None the less, if the dam has occasioned him some loss by diverting the salt water, he should be made whole, provided his losses are proven, and the demand not barred by one year's prescription pleaded.

[3] Now as to the amount of damages claimed:

The witnesses for plaintiff have testified in general terms in regard to the value of the trees, which they fixed at $6 a tree, and the number of acres on which these trees were destroyed at 66.

The principal witness for plaintiff fixed the value of the trees deadened by the salt water, and which still remained on the land, at $2 a tree, so that, according to this witness of plaintiff, the damage is $4 for each tree.

As relates to the number of trees, this witness does not seem to have been reasonably certain. He fixed the number of trees on one acre at 5, and from that number of one acre arrived at the conclusion that every other acre had a similar number.

This witness (Lormand, a first cousin of plaintiff, residing at or on plaintiff's place) estimated the number altogether as before stated, but he does not seem to have had great confidence in his own estimate. When he was asked if there were as many as 300 trees altogether, his reply was that he could not say; that he had not counted the trees. At another time, while testifying, he said that the cypress tree was a hardy tree, not easily destroyed by water, but at another time he testified that it was possible for these trees to have been destroyed in the one year just preceding the date the suit was filed.

At one time, he is of the opinion that the trees are sturdy, strong, and healthy and not easily destroyed; at another, that in the one year preceding the filing of the suit they were destroyed.

The other witnesses who testified, to wit, Cormier and the plaintiff and his son, were not certain in regard to the time the trees were destroyed.

Their indefinite mode of testifying does not carry conviction.

But, on the other hand, defendant's witnesses testified that these trees were destroyed some three, four, or five years before suit was brought.

Mr. W. W. Ruson testified that practically all the timber in the swamps or in the creeks was killed in 1903, 1904, and 1905. The larger number was destroyed in 1904, he said.

He added that the production of oil in the oil fields of Jennings was specially abundant in 1905, and in that year the volume of water which was drained from the oil and flowed to the Bayou Des Cannes was largest, and did the most damage.

He informs us by his testimony that the defendant irrigation company was greatly annoyed by this water. It was destructive to the rice crop which it was irrigating.

There was, in consequence, friction between the defendant irrigation company and the oil company in the oil fields. They went to the extent of employing guards in their endeavor to protect themselves from the flow of salt water into the drain before mentioned.

On cross-examination, this witness testified that he could see this swamp in 1906, and looking across while passing he saw that the timber was dead.

E. S. Andrus, another witness for the defendant, testified that there were in these swamps acres of land with very few trees on them, and they were small, and looked as if they had been dead some three or four years; that he went all through the swamp.

Louis H. Andrus, another witness for defendant, was, if anything, more positive in testifying about the dead trees, and the date they were destroyed.

Plaintiff, Clement, as a witness, admitted that the trees in this swamp began to die a number of years ago from the effect of the salt water. He subsequently said that these trees continued to die, and some of them were destroyed during the year preceding the filing of the suit, but he did not state the number.

After carefully considering the evidence, we have arrived at the conclusion to affirm the judgment, in so far as relates to damages and to the necessity of opening the dam.

The destructive salt water, it strikes us, destroyed these trees within a short time, as stated by witnesses for the plaintiff, after they were kept back in the swamp by the drain.

With reference to opening the dam, the testimony leads us to the conclusion that by all means it should be opened.

Every one seems to be interested in the opening of that drain, and in allowing the surplus salt water to flow through and away from the cypress swamps and the rice fields.

[5] Part of plaintiff's demand having been allowed, defendant owes the costs in the district court. Act No. 229 of 1910.

The appellee did not move for an amendment of the judgment. Therefore the dam and its obstructions shall have to be removed at defendant's costs, as originally decreed.

For reasons stated, it is ordered, adjudged, and decreed that the judgment be amended by condemning the defendant to pay the costs of the proceedings in the district courts; also the costs of appeal. In all other respects, the judgment appealed from is affirmed.