(111 So. 174)

No. 26085.

## C. A. SCHNACK JEWELRY CO. et al. v. O'SHEE REALTY CO., Limited.

(Jan. 3, 1927.)

*(Syllabus by Editorial Staff.)*

1. **Waters and water courses ⬅126(2)—Plaintiff alleging damage from failure to provide drainage for rainwater from roof must establish proximate cause.**

    Plaintiff, alleging damage because of negligence of owner of adjoining building in failing to provide drainage for rainwater precipitated from roof of building, has burden of establishing, with reasonable certainty, the proximate cause of damage complained of.

2. **Waters and water courses ⬅126(3)—Evidence held to justify judgment dismissing suit against adjoining owner for failure to provide drainage for rainwater from roof.**

    Evidence *held* insufficient to justify Supreme Court in disturbing lower court's judgment dismissing suit for damages for negligence of owner of adjoining building in failing to provide drainage for rainwater precipitated from roof of building.

Appeal from Thirteenth Judicial District Court, Parish of Rapides; J. A. Williams, Judge.

Suit by the C. A. Schnack Jewelry Company and another against the O'Shee Realty Company, Limited. From a judgment dismissing the suit, plaintiffs appeal. Affirmed.

Provosty & West, of Alexandria, for appellants.

Thornton, Gist & Richey, of Alexandria, for appellee.

BRUNOT, J. The defendant and Mrs. Ella K. Hunter own adjoining properties in the city of Alexandria, La. The Schnack Jewelry Company is the lessee and occupant of Mrs. Hunter's property. The C. A. Schnack Jewelry Company and Mrs. Ella K. Hunter filed a joint petition in which it is alleged that defendant negligently failed to provide drainage to carry off the rainwater, which was precipitated from the roof of its building into an inclosed alley, on its premises, adjoining the wall of the Hunter building, thereby causing excessive dampness in the interior of that building, with resultant loss and damage to the plaintiffs. There is also an allegation of irreparable injury to the plaintiffs, and the prayer of the petition is for a judgment in favor of the C. A. Schnack Jewelry Company and against the defendant for $2,164.12, actual damages, for a judgment in favor of both plaintiffs in solido, and against the defendant for $2,000 for alleged depreciation of the sale and rental value of the Hunter property, and for an injunction compelling the defendant to repair its building and to properly drain its premises.

A rule nisi issued. Defendant excepted to the sufficiency of the rule, prayed for its dismissal, with costs, and for a judgment against the plaintiffs for damages. There-

upon the plaintiffs filed a supplemental petition in which they asked for the dismissal of the rule nisi at their cost, without damages, and without prejudice to their right to an injunction in the event their right thereto is proven on the trial of the case upon its merits. The trial judge dismissed the rule at plaintiffs' cost, without damages, and without prejudice to their rights, as prayed for in the supplemental petition. Thereafter the defendant excepted to the petition upon the ground that it did not disclose a right or cause of action. This exception was overruled, defendant filed an answer to the petition, the case was tried, and a judgment was rendered rejecting plaintiff's demands and dismissing their suit, with costs. From this judgment both plaintiffs appealed.

The issues raised by the application for an injunction have been eliminated from the case and will not again be referred to, except, perhaps, incidentally.

Counsel for defendant seriously contend that the lower court erred in overruling the defendant's exception of no right or cause of action, but, inasmuch as the case was tried on the merits and as counsel's argument on the merits has equal application to the exception, they do not insist upon the exception being passed upon independently and preliminarily.

The petition describes the respective properties of Mrs. Hunter and of the defendant; it alleges the existence of the lease of the Hunter property to the Schnack Jewelry Company, and the obligation of that company, under the lease, to repair and improve the property; it alleges that the Schnack Jewelry Company repaired, improved, and waterproofed the property; that it installed therein costly showcases and fixtures; that its showcases and fixtures were greatly damaged by the continuous existence of excessive moisture in the premises; that some of its valuable merchandise was destroyed and other merchandise was damaged by reason of the dampness; and that every reasonable effort was made by the Schnack Jewelry Company to correct the condition which caused the damage, but that its efforts were unavailing because plaintiffs were ignorant of the source from which the moisture came until a few months prior to the filing of this suit. The petition itemizes the damages for which the Schnack Jewelry Company prays for judgment against the defendant, and the alleged acts of negligence on the part of defendant upon which this suit is based are enumerated in paragraphs 14, 15, and 16 thereof, as follows:

"(14) That the wall of the building at 1026 Second street, the property of defendant, extends back 20 feet flush against the wall of the premises occupied by your petitioner; that for the distance of about 24 feet in the rear the two walls are also attached to each other; that intervening between the two attached portions there is a space approximately 20 feet long with a 2-foot set-off entirely on the premises belonging to O'Shee Realty Company, Limited, and totally inclosed, leaving a small alley or well against the Schnack wall; that the roof of defendant's premises slopes toward the said well from all directions precipitating into it all water falling on said roof; that originally there was a gutter or drain allowing water falling on the said roof to escape into the street, but through the negligence of defendant herein the said safeguards have disappeared.

"(15) That the said defendant, though often requested to do so, has willfully, negligently and to the damage of both your petitioners refused to repair its premises and to provide a reasonable means of carrying off the water flowing from its roof against your petitioners' wall.

"(16) That the sole cause of the unreasonable and noticeable dampness and damage in the premises owned by your petitioner Mrs. Ella K. Hunter, and occupied by your petitioner the jewelry company, is the seepage of water from the alley or well, willfully, negligently and improperly maintained by defendant on its premises at 1026 Second street."

In paragraph 19 of the petition certain acts of negligence, on the part of the defendant, are alleged; but as these acts only relate to the maintenance of a private nuisance on defendant's premises which increased the plaintiffs' fire hazard, and upon which their ap-

plication for an injunction was primarily based, and as all issues relating to the application for an injunction have passed out of the case, that paragraph need not be quoted.

The defendant, in its answer, admits the ownership of the properties as alleged in the petition, but it denies that the condition of its property caused any damage to the plaintiffs; it denies all of the material allegations of the petition upon which plaintiffs' demands for damages are predicated, and it alleges that if the moisture complained of by plaintiffs was caused by seepage from defendant's alley, such seepage resulted from the lawful use by defendant of its property; it alleges it had no knowledge of the dampness complained of by plaintiffs until the spring of 1922, a short time before this suit was filed; that its original building was constructed in 1860 and the additions thereto were constructed many years ago; that the general condition of its property has remained unchanged for more than 30 years; and that it has done no act with reference to the roof, the alley, or any part of its property which could bring about the conditions complained of by the plaintiffs. Defendant further alleges that if it did not have the legal right to permit the rainwater falling upon its roof to drip upon its own land, it has, by an uninterrupted use thereof for more than 30 years, acquired the right of drip, drain, and seepage by the prescriptions of 10 and 30 years; and that all damages claimed in plaintiffs' petition were occasioned and were discovered by plaintiffs more than 12 months prior to the filing of this suit, and are therefore barred by the prescription of one year. It was upon these issues that the trial was had.

From the record it appears that the O'Shee building, now the property of the defendant, was constructed and occupied by its then owner, a man named O'Shee, in 1860 or 1861. It was built in three sections. The first section fronts on Second street and extends back along the line of the property now owned by Mrs. Hunter and occupied by the Schnack Jewelry Company, for a distance of 20 feet. The wall of the middle section nearest the Hunter property was set back 42 inches from the line of that property and parallels that property line for approximately 24 feet, and the wall of the rear section, like the front wall, was built along the line of the Hunter property, thus forming a court or alley 42 inches wide by about 24 feet long, walled in on three sides; the adjoining property being a vacant lot at that time. The owner conducted a grocery store in the front section, a bakery in the rear section, and he and his family lived in the middle section. After his death, one of his sons devoted the property to similar uses until two or three years before this suit was filed, since which time it appears to have been vacant. For some years prior to 1903 there was a frame building on the lot now owned by Mrs. Hunter. In 1902 a man named Calvit acquired the property, cleared the lot, and built a brick structure thereon the entire length and along the line of defendant's property, which completely walled in the court or alley thereon from the ground up. In 1903 Mrs. Hunter acquired this property from the widow and heirs of Calvit. The construction of the Calvit building in 1903 completely inclosed defendant's alley, and as no provision was made for draining the alley the condition was thereby created of which plaintiffs now complain.

It appears from the testimony that plaintiffs were under the impression that the moisture was from natural causes and was coming from beneath the floor of the Hunter building, and the floor was concreted next to the two side walls. This work did not remedy the trouble, and in September, 1921, a carpenter was called in by plaintiffs, who, upon looking down from the top of the Hunter building after a rain, discovered puddles

of water standing in defendant's alley. This discovery led plaintiffs to believe that the dampness which affected them was due to seepage from defendant's property, but no inspection of the alley or of plaintiff's wall abutting it was made, and the matter was not called to the attention of defendant until several months thereafter.

[1] In suits of this character the burden is upon the plaintiff to establish, with reasonable certainty, the proximate cause of the damage of which he complains. Beck v. Fleitas, 37 La. Ann. 492; Payne v. James, 45 La. Ann. 381, 12 So. 492; Clement v. La. Co., 129 La. 825, 56 So. 902.

Five witnesses testified for plaintiffs on this point. They were Mrs. Hunter, one of the plaintiffs; Mr. W. F. Hunter, president of the Schnack Jewelry Company, the other plaintiff; Mr. Schnack, the brother of Mrs. Hunter; Mr. Duncan, an architect; and Mr. Gehr, a contractor. Mrs. Hunter says:

"I don't know where the moisture came from, whether through the wall or through the flooring, but it was there."

[2] None of the plaintiffs' witnesses testify with any reasonable degree of certainty as to the source from which the water came that caused excessive moisture in the Hunter building, and none of them pretend to have made any reasonable effort to determine whether that moisture was the result of seepage from defendant's property or was caused by other means. Their testimony is based upon an assumption, without serious investigation, and damage suits are not won upon proof of mere suppositions and beliefs. There are many pages of testimony depicting the condition of defendant's property, but the record discloses that for more than 30 years not a single act has been done by defendant or by those from whom the property was acquired to alter or change its condition in any respect, and as late as 1916, when Mrs. Hunter's building was remodeled, it was perfectly dry, although the work of remodeling that building was done during a very rainy season. It appears from the testimony that only the interior walls of the Hunter building were waterproofed, and plaintiffs' expert witness, Mr. Duncan, says that waterproofing the interior of a wall only will not suffice to keep the moisture out.

On the other hand, and with the view of testifying in the case, Mr. Ball, an architect and engineer, made an inspection of the properties of Mrs. Hunter and of defendant. The substance of his testimony is that he found several holes in the wall of the Hunter building, at a point level with the ground and opposite defendant's alley; one of these holes was about the size of a brick. On the opposite side of the Hunter building there was a reservoir under the First National Bank Building 12 or 18 inches lower than the sidewalk on Second street, into which water could flow from an alley through a vent hole under the bank building, and that the drainpipe under the Hunter building was, in part, lower than the gutter in Second street, and during heavy rains water from Second street could easily flow back under the Hunter building.

The testimony is persuasive of the fact that some of the water which found its way under the Hunter building escaped from defendant's alley and flowed through the hole in defendant's wall, but it is shown that this was but one of several means by which water might have collected there. The testimony, as a whole, is unsatisfactory, and it does not warrant us in disturbing the judgment of the lower court. This conclusion obviates the necessity of passing upon defendant's exception or pleas of prescription.

The judgment appealed from is therefore affirmed at appellant's cost.