## NORMAN v. LACROIX. *
### No. 4545.

Court of Appeal of Louisiana. Second Circuit.

June 5, 1933.

Dickson & Denny, of Shreveport, for appellant.

John R. Hunter, of Alexandria, for appellee.

TALIAFERRO, Judge.

Plaintiff and defendant own the Acme plantation in Grant parish, La. The interest of each therein has been fixed by partition between them. The plantation work stock and farming implements are undivided. Plaintiff, in writing, leased to defendant her part of the plantation, some 361.50 acres, excepting hay meadow of approximately 35 acres, and her interest in the work stock and farming implements for the year 1932 for $1,000. The leased premises is located on or near Red river, and is subject to inundation from that stream. In the contract of lease the following stipulation was incorporated for the protection of the lessee in event the leased property should be overflowed in 1932, viz.: "It is understood and agreed that the lessee herein shall assume all responsibility for crop losses on said property caused by fire, cr other acts of God, excepting overflow, and in event of overflow, then the lessor agrees to accept the full amount of taxes, on the entire 361 acres, and mules and implements, as rental in lieu of $1000.00, and nothing of that nature shall effect the terms and conditions herein."

This suit was brought to recover the full lease price. Defendant resists the suit, alleging that the leased property was overflowed twice in the early part of the year 1932, and invokes the above-quoted provision of the contract of lease as fixing her rights and limiting her obligations as lessee under the conditions mentioned. She admits she is due to pay the taxes of 1932, against the leased property, admitted at trial of the case to be $475, but avers her inability to have done so before this suit was filed because the tax roll for that year had not been filed; that as a consequence of said overflow of the leased premises she was delayed in preparing the land for planting crops and delayed in planting same, with the result that she sustained loss in quality and quantity of production.

She also avers that she suffered additional loss on the cotton crop produced from the land because the delay in planting caused delay in gathering and marketing the cotton, and that the delay in gathering and marketing the crop made it impossible to realize therefrom the very favorable prices prevailing for cotton placed on the season's early market, and that the price, from that time on, declined.

There was judgment rejecting plaintiff's demands in the lower court. She has appealed.

The leased premises were overflowed in January and again in February. The water receded last about the middle of February. The cultivatable lands had not been prepared for planting before the waters covered them. Necessarily, after the water abated, it required some time for the land to "dry out" before breaking could be done. This began on March 23d. The crop was 20 days, or more, late, due to the effect of the two overflows.

The corn crop produced on the overflowed land was considered good, above the average. Lessee cultivated the leased land during the year 1931 and raised 126 bales of cotton thereon, but only raised 90 bales in 1932, or 72 per cent. of the 1931 yield. It is indeed uncertain, problematical, whether the shortage in the cotton crop can be safely charged to the effect of the land being inundated. It is certain the crop was delayed as a direct result of the overflows. It is also certain the morning showers in July caused material injury to the blooming cotton. Had the crop been planted as early as usual it is probable the effect of these showers would have been much less harmful than they actually were. Many factors contribute to the making of, or failing to make, a satisfactory cotton crop. When there is failure of crop, or material shortage in production, due to different causes, it is humanly impossible to accurately ascribe to any given cause the extent of the loss occasioned by its effect. The later the crop is planted the greater is the danger of loss from boll weevil ravage.

It is shown that production of cotton on lands near the Acme plantation, which were not overflowed, in 1932 was very much below that in 1931. The owners of such lands credit the June and July rains with the shortage in production.

■ Article 2743 of the Civil Code provides that the tenant of a predial estate cannot claim an abatement of the rent on the ground that the whole or a part of his crop has been destroyed by accident, unless such accident be of such extraordinary nature that it could not have been foreseen by either of the parties, such as the ravages of war. The concluding paragraphs of this article read:

"But even in these cases, the loss suffered must have been equal to the value of one-half of the crop at least, to entitle the tenant to an abatement of the rent.

"The tenant has no right to an abatement, if it is stipulated in the contract, that the tenant shall run all the chances of all foreseen and unforeseen accidents."

It has been often and invariably held by our courts that an overflow is not an unforeseen or an extraordinary accident, within the meaning of this article, and that such event does not relieve the tenant from payment of rent. Jackson, adm'x, v. Michie & Murdock, 33 La. Ann. 723; Vinson v. Graves, 16 La. Ann. 162; Payne v. James & Trager, 45 La. Ann. 381, 12 So. 492; Hollingsworth v. Atkins Bros., 46 La. Ann. 515, 15 So. 77; Haygood v. McKenna, 11 La. App. 312, 123 So. 479; Viterbo v. Friedlander, 120 U. S. 707, 7 S. Ct. 962, 7 L. Ed. 776.

Even in cases of destruction to crops from causes wholly unforeseen, there can be no abatement of rent unless the loss suffered equaled one-half the value of the crop; and there can be no abatement whatever if the lease contains a stipulation "that the tenant shall run all the chances of all foreseen and unforeseen accidents."

■■ This article regulates and governs the rights and obligations between landlord and tenant of inundated predial estates when the contract between them does not derogate from its plain and unambiguous terms. Of course, where the parties by their own convention undertake to provide against unforeseen or foreseen happenings, then the contract between them is the law of the case and will, and should, be enforced as written. The lease agreement before us is illustrative of the fact that the lessee may prudently protect himself against the payment of rent where his crops have been injured or totally destroyed by a foreseeable event such as an overflow. The intention of the lessee in this case is made clearer when we note that the contract of lease, as originally prepared, put the lessee in the position of assuming all responsibility for crop losses caused by "fire, floods or other acts of God." The word "floods" was erased before the contract was signed and the following inserted in lieu of it: "Excepting overflow. And in event of overflow then the lessor agrees to accept the full amount of taxes on the entire 361 acres and mules and implements as rental in lieu of $1000.00."

It is an experience well known to every one, who has lived on land subject to annual overflow from the rivers, that, in addition to the loss of or injury to crops, there are many other unpleasant and expensive effects of an inundation of improved property. The damage to fences, buildings, and other improvements, caused by standing water, or by rapidly moving currents, the removal of work and other stock to high land, and maintaining

them there for several weeks, and many other incidents that happen during or follow the wake of an overflow, all illuminate the reason why one should not desire to pay the same rent on overflowed land as he would for land not overflowed, and this, regardless of whether the crops made, after the water receded, equal normal production or not. Under the lease before us the lessee was obligated to "bear all expenses of upkeep of fences, cabins and farm implements" on the leased property, usual wear and tear excepted.

In the present case, the lessee has agreed to pay the taxes of the year 1932, on the leased property in lieu of rent, should the land be overflowed. These taxes equal about one-half of the rental price, if there had been no overflow. There were two overflows of the property, accompanied by the usual amount of expense, inconvenience, and unpleasantness. The parties must have contemplated all these possibilities in reaching this agreement, which is clear and explicit. If this were not true, the contract would probably have provided that, in case of overflow, the rent price would be reduced in same proportion as crops were damaged by the overflow.

Regardless of whether the shortage in the crop was due to the overflows or not, we think the contract the law of the case. To hold that defendant should pay the full rental price is to hold that the provision governing the amount of rent to be paid in case of overflow is a mere gesture, without meaning or effect, and, though incorporated deliberately in the contract by the parties, will be arbitrarily disregarded by the court. It is the province of the court to enforce all reasonable and legal covenants when freely entered into by the signatories thereto; not to override the clearly expressed will of the parties by eliminating their own agreements and substituting something of its own in lieu thereof.

Judgment of the lower court affirmed.