DOMENGEAUX, Judge.
This litigation arises under a lease contract entered into between the plaintiff, Thomas J. Catalanotto as lessor,- and the defendant, TAC Amusement Company as lessee, for a period commencing on January 1, 1968 and ending on December 31, 1968, providing the right of renewal for 19 one year options. The plaintiff was proprietor of the premises located at 400 North Galvez Street in the City of New Orleans. For several years he had operated therein a restaurant, bar, and hotel business. On December 21, 1967, he sold the business to one Louis Duzac. The sale included, inter alia, a stove and hood over the stove, and a large pizza oven. Duzac obtained the funds to purchase the business by means of a loan from defendant. In order to protect its interest defendant became the primary lessee of the premises from plaintiff, and subleased to Duzac. Duzac took possession of the premises and operated the business in much the same manner as plaintiff had done before him. In time Duzac removed the old stove and replaced it with a new one of the same make and model. He also replaced the large pizza oven with a smaller, electric pizza oven.
On May 16, 1968 defendant received notice, in the form of a copy of a letter from plaintiff’s managing agent to plaintiff’s insurance agent, that he was expected to install an Ansul System within fifteen days of the date of the letter. This Ansul System is, as the court understands it, a fire prevention device which is permanently installed in the hood above the stove. It was said to be necessary in this case to increase the size of the hood in order to effect a proper installation. The total cost of the device was $850.00 for installation plus $50.00 per year thereafter for maintenance. The need for the Ansul System arose from a demand by the two companies insuring the premises that it be installed under penalty of cancellation of their respective policies. The system was not installed and cancellation of the policies, re *845 insurance for a lessor amount through another company, and subsequent cancellation by it also, followed. Attempts by the plaintiff’s insurance agent to obtain insurance from four other companies, as well as an effort to obtain it through another agency, met with failure and as of noon on July 30, 1968 there was no insurance covering the premises. On that date plaintiff’s attorney wrote defendant stating that defendant had violated the lease agreement and had not corrected the violation within fifteen days as provided by the lease and requesting that the premises be immediately turned over to plaintiff in order that the corrective work might be performed by plaintiff. He further informed defendant that there was at that time no insurance on the property. On the following day defendant’s attorney wrote plaintiff’s attorney denying that a violation had occurred and that notice had been received thereof and stating that defendant was obtaining insurance on the premises. On August 6, 1968 defendant’s attorney again wrote plaintiff’s attorney forwarding to him a binder for insurance obtained by defendant in an amount nearly three times that previously carried by plaintiff. Further correspondence followed and on October 4, 1968, plaintiff filed a petition for possession alleging a violation of the terms of the lease by defendant. The case was tried on October 30, 1968, and judgment was rendered in favor of plaintiff and ordering the defendant to deliver possession of the premises to plaintiff within forty-eight hours. From this judgment defendant perfected a suspensive and devolutive appeal to this court.
The first issue before us is whether in fact there was a violation of the terms of the lease in question. Plaintiff accuses defendant of violating lines 103 to 112 of the instrument. That portion of the lease reads as follows:
“Lessee is obligated to put nothing in the leased premises nor to do anything which would forfeit the insurance, and should any installation made or action taken by Lessee, whether authorized or unauthorized under this lease, increase the rate of insurance on the building or contents as fixed by the Louisiana Fire Prevention Bureau, or any similar institution, then Lessee is obligated to pay such increased rate of insurance on building and all contents. Should the Lessee’s occupancy or business render the Lessor unable to secure proper insurance, then Lessee hereby grants to Lessor the option of cancelling this lease, Lessee waiving all delays, and agreeing to surrender possession at once, if notified by Lessor to do so. Lessee is obligated to notify Lessor or Lessor’s Agent, in writing, anytime the leased premises will be unoccupied, so that necessary vacancy permits may be obtained from Lessor’s insurers, and failure to comply with this condition will make Lessee liable for any loss or damage sustained by Lessor.”
Reduced to its most basic form, plaintiff’s contention is that the Ansul System was made necessary by the changes which Duzac made in the culinary equipment, and that defendant’s failure to install the Ansul System made it impossible for plaintiff to obtain insurance, thus putting defendant in violation of the above quoted paragraph of the lease contract and giving plaintiff the right to terminate the lease and evict defendant.
Bearing in mind that in disputes arising under a lease contract, said contract is to be taken as the law of the case, Norman v. Lacroix, La.App., 148 So. 458, we shall now consider the merits of plaintiff’s argument. The changes made by Duzac consisted as stated previously of replacing the old stove with a new one of the same make and model. Save for the fact that it was new, it was identical to the old one. The only other change was the removal of an old pizza oven, which we gather was gas operated, and which Duzac said had no vent and was therefore dangerous. Duzac replaced that oven with a smaller electric oven. Certainly these improvements would, if anything make the Ansul System less *846 necessary than before. Installing a new stove of no greater capacity than the old and replacing a vent-less gas oven with a smaller electric oven would, it seems to us, lessen rather than increase the danger of fire. The business had been operated by plaintiff in the same manner as it was operated by Duzac, but with the old equipment, for years. Plaintiff had never experienced any difficulty in obtaining or keeping insurance during his years of operation.
Our reading of the record convinces us that the Ansul System was not known by any of the parties at the time they entered into the lease and sublease and in all probability was unknown even to the insurance companies involved herein. Many insurance companies are reluctant to insure the occupancy we have here, i. e., a restaurant-type business, in a frame building because of the fire hazard inherent in the operation. Thus the insurance companies are prone to require the utilization of all known safety devices. The testimony in this case indicates to us that the Ansul System is a new device that, upon becoming known to the insurance companies, was required by them in an operation such as we have here. We therefore conclude that the system was not made necessary by anything defendant did on the premises, but rather by the advancement of science, combined with the demands of the insurance companies.
Even if the defendant’s occupancy did make the Ansul System necessary, which we do not hold it did, we are not convinced that it was impossible for plaintiff to acquire proper insurance. The record does not show that plaintiff made any effort to secure insurance other than consulting his own insurance agent. The agent’s attempts were limited to consultation with but four companies and one other agency. Specially in view of the fact that defendant was able to obtain triple the amount of insurance formerly carried by plaintiff immediately upon being notified that there was no insurance on the premises, we are of the opinion that plaintiff’s efforts to obtain insurance were too meager to enable him to say that he was unable to obtain insurance. This is particularly true in view of the serious consequences which would result if the plaintiff’s view were adopted, i. e., the abrogation of the lease. Our jurisprudence is clear in its disfavor where the forfeiture of leases is concerned. Ruffino v. Ruffino, La.App., 138 So.2d 609.
For the foregoing reasons the judgment of the lower court must be, and the same is hereby reversed. Judgment is now rendered in favor of defendant, TAC Amusement Company, and against plaintiff, Thomas J. Catalanotto, dismissing plaintiff’s demand at his cost in both courts.
Reversed.