528 So.2d 231 (1988)
ROMCO, INC., and Wesley J. Allen, Jr., Plaintiffs-Appellees,
v.
Tamra M. BROUSSARD, State Farm Mutual Automobile Insurance Company & Louisiana Motors, Inc., Defendants-Appellants.
No. 87-494.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
Rehearing Denied August 8, 1988.
Roy & Hattan, L. Lane Roy, Lafayette, for plaintiffs-appellees.
David M. Kaufman, Lafayette, for defendants-appellants.
Before GUIDRY, FORET and LABORDE, JJ.
FORET, Judge.
This is a suit for property damages resulting from an automobile collision. The accident occurred when an Oldsmobile owned by defendant, Tamra Broussard, and insured by State Farm Mutual Automobile Insurance Company (State Farm) collided with a 1985 Pontiac Trans Am owned by plaintiff, Romco, Inc. and leased to plaintiff, Wesley Allen. Plaintiffs sued defendants[1] for the amount of $7,500 in damages to the Trans Am and $1,823.20 for expenses incurred in renting a substitute *232 vehicle. The trial court found in favor of plaintiffs, awarding Romco, Inc. $5,229, calculated as the value of the Trans Am at the time of the accident, less the wholesale price obtained. Additionally, the trial court awarded Allen reimbursement for a rental vehicle in the amount of $1,000, based upon a rental rate of $20 per day for fifty days.
Defendants, Tamra Broussard and State Farm, appealed the judgment of the trial court, raising the following issues on appeal:
1.) Under Louisiana law, where a vehicle may be reasonably repaired, is the owner of the vehicle entitled to recover the "market value" less its "salvage or wholesale value", or is he simply entitled to recover the cost of repairing the vehicle?
2.) What amount of depreciation, if any, is plaintiff Romco, Inc., entitled to recover?
3.) Is plaintiff Wesley Allen entitled to recover $20.00 per day rental for a replacement vehicle for fifty (50) days.
We amend the judgment of the trial court and affirm as amended.

FACTS
The accident from which this suit arose occurred on March 11, 1985, when an automobile owned by defendant, Tamra Broussard and insured by State Farm, collided with a 1985 Pontiac Trans Am owned by Romco, Inc. and leased to Wesley Allen.
At the time of the accident, plaintiffs' Trans Am was being driven by an employee of Louisiana Motors, Inc., who had taken custody of the car to do some repairs. The trial court found that the accident was caused solely by the negligence of Tamra Broussard.
On March 13, 1985, two days after the accident, plaintiffs' Trans Am was inspected by Paul Verger, State Farm's property claims adjuster. Verger's expertise in the estimation of repairs was stipulated to by the parties. Plaintiffs' damages were estimated at $3,220.28 for the repair of the Trans Am. Veger testified that the main damages to the Trans Am were to the front bumper, left front fender, hood, grill, and left headlight. His repair estimate was based on repairing the car up to "100% factory specifications with a quality repair job." He indicated that 99% of the estimate involved replacement items, rather than the repair of damaged parts. His estimate included 15.2 hours of replacement labor and 4.0 hours of repair labor. He additionally testified that the estimate would have been mailed, in the normal course of business, to the plaintiffs within a few days of March 13, 1985. Plaintiffs had no independent damage estimate.
Plaintiff, Allen, entered into a rental agreement on March 12, 1985, with Lafayette Motors, Inc., whereby he leased a vehicle at the rate of $20 per day. Allen used this rental vehicle until June 5, 1985, a total of 86 days. Allen testified that he kept the rental car in his possession for this length of time because he was involved in negotiations with State Farm. It appears that plaintiffs were attempting to settle with State Farm but were unhappy with State Farm's offer.
Allen testified that he went to look at the Trans Am the day after the accident and, at that time, did not want to have the car repaired. He stated unequivocally that, "once the car was wrecked, I absolutely, positively did not want it repaired." He testified that it did not take long, after the collision, to find out how much damage there was to the car.
Romco, Inc., unsure as to whether they wanted to repair the damaged Trans Am, obtained bids as to its "salvage or wholesale" value during the latter part of March of 1985. The Trans Am was subsequently traded by Romco to Lafayette Motors. Lafayette Motors sold the Trans Am to Larry Leger, Inc. for $8,500 on June 6, 1985. The evidence disclosed that Larry Leger, Inc. then sold the Trans Am for $9,200 to Peltier's, Inc., without performing any repairs on the vehicle prior to its sale. The Trans Am was ultimately sold, as is, by Peltier's, Inc. to Gaylan Fann's Auto Salvage in Manchester, Tennessee, for $10,000.
The plaintiffs determined that they desired to dispose of the vehicle rather than *233 repair it and attempted, unsuccessfully, to conclude a settlement with State Farm which reflected their loss in light of their decision to sell the Trans Am at "salvage or wholesale" value.
On April 2, 1985, approximately three weeks after the accident, State Farm tendered a check to plaintiffs in the amount of $3,220.28.

DAMAGES
Appellants contend that the trial court erred in awarding Romco, Inc. damages based upon the "market value" of the Trans Am less its "salvage or wholesale value".
The issue of the proper measure of property damage was squarely decided by the Louisiana Supreme Court in Coleman v. Victor, 326 So.2d 344 (La.1976). In Coleman, plaintiffs' damaged vehicle was sold for $350, although it could have been repaired for $800. The plaintiffs urged that they were entitled to the difference between the value of the vehicle before the accident and the sum for which it was sold.
The Court, in determining that the cost of repair was the proper measure of damages, stated:
"When property is damaged through the legal fault of another, the primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the damage, it is well settled that the measure of damage is the cost of restoring the property to its former condition. In assessing damage to property, generally, courts have considered the cost of restoration as the proper measure of damage where the thing damaged can be adequately repaired."
Coleman, supra, at pages 346, 347.
More recently, in Giles Lafayette, Inc. v. State Farm Mutual Automobile Insurance Company, 467 So.2d 1309 (La.App. 3 Cir.1985), writ denied, 472 So.2d 911 (La. 1985), we were presented with the issue of the proper measure of damages arising under similar facts. In Giles, a car belonging to the dealership was damaged while being driven by a dealership employee.
The trial court awarded Giles the difference between the market value of the vehicle and its "salvage value" rather than the cost of repairs. In amending the judgment of the trial court, we reiterated the general rule regarding damage awards involving automobiles, as follows:
"`As a general rule, recovery in cases of damages to an automobile is limited to cost of repair. Thiery v. Motors Insurance Corporation [1971], La.App., 255 So.2d 181; Cloney v. Travelers Insurance Company [1971], La.App., 253 So. 2d 83. Where, however, a vehicle is totally destroyed, or so badly damaged that the cost of repair exceeds its value, the measure of damages is the value of the vehicle less its salvage value. Bernard v. Fidelity & Casualty Company of New York [1966], La.App., 186 So.2d 904; Cloney, above. Where an award of cost of repair is the measure of damages in a case involving damages to an automobile, additional damages may be recovered for diminution of value by virtue of the vehicle having been involved in an accident, provided proof of such diminished value be made. Gary v. Allstate Ins. Co. [1971], La.App., 250 So.2d 168.'"
Giles, supra, at pages 1310, 1311, citing Traders & General Insurance Company v. Robison, 289 So.2d 178, 185 (La.App. 1 Cir.1973).
In Giles, as in Coleman, there was no evidence that the vehicle was so badly damaged that the cost of repairs exceeded the value of the vehicle before the accident. Therefore, the plaintiff was not entitled to market value less salvage but instead, his recovery was limited to the cost of repairs.
We find nothing in this case to distinguish it from Coleman and Giles. The trial court found that plaintiff's Trans Am was worth $13,729 prior to the accident. The undisputed cost of repair to the damaged vehicle was $3,220.28. The evidence reflected that this repair estimate envisioned a quality repair job, mainly consisting of replacement parts, bringing the vehicle up to factory and dealer specifications. Romco, Inc. chose, for its own reasons, *234 not to have the Trans Am repaired but instead sold or traded it for a consideration of $8,500. Clearly, the cost of repairs to the Trans Am would not exceed the value of the vehicle before the accident. Therefore, the owner, Romco, Inc., may not receive market value less "salvage" value as a proper measure of damages. Instead, Romco's recovery is limited to the cost of repair or $3,220.28.

DEPRECIATION
The next issue to be decided is whether Romco, Inc. is entitled to depreciation as an element of damages.
Where the measure of damages is the cost of repairs, damages for depreciation are also recoverable where there is sufficient evidence presented as to the amount that the vehicle decreased in value solely due to being involved in a collision. See, Giles, supra.
Nolan Broussard, appearing for plaintiffs, testified that generally an automobile that has been damaged and repaired will sell for less than an automobile that has not been damaged. He also testified that this loss in retail sales value was greater in a vehicle two years old or newer as opposed to an older vehicle.
Although Broussard never actually viewed Romco's Trans Am, either before or after the accident, he valued the Trans Am, before the collision, at a retail value of $13,729 and after the accident and after repairs, at a retail value of $11,783.
In actuality, the Trans Am was never repaired by Romco but instead was sold for its "wholesale or salvage value." A proper award for depreciation contemplates an award for a decrease in a vehicle's value after being repaired. The jurisprudence awarding damages for depreciation involves facts wherein a repaired vehicle decreases in value, despite a quality repair job, solely due to the fact that the vehicle has been involved in a collision.
In this case, the Trans Am was not repaired, and the record contains no evidence as to any actual depreciation that Romco suffered due to a loss in value of the repaired vehicle. Broussard's testimony regarding depreciation is calculated on an anticipated loss in retail sales value. There was no attempt made by Romco to sell the Trans Am on the retail market. The evidence does show that the unrepaired Trans Am was ultimately sold on the wholesale market for $10,000.
Romco suffered no actual damage or loss due to depreciation or due to a decrease in the retail sales value of the Trans Am.
"When damages are claimed their amount must be proven with certainty. Clement v. Louisiana Irrigation & Mill Co., 129 La. 825, 56 So. 902 (1911); Smith v. White, 411 So.2d 731 (La.App. 3rd Cir.1982), writ denied, 413 So.2d 508 (La.1982). Proof which establishes only possibility, speculation or unsupported probability does not establish a damage claim. Mitchell Bros. v. Dinvaut, 374 So.2d 199 (La.App. 4th Cir.1979), writ denied, 376 So.2d 1271 (La.1979); Rawley v. Rawley, 357 So.2d 286 (La.App. 1st Cir.1978), writ denied, 357 So.2d 1154 (La.1978), cert. den., 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978). Courts cannot award speculative damages. Coco v. Richland General Contractors, Inc., 411 So.2d 1260 (La.App. 3rd Cir. 1982), writ denied, 413 So.2d 909 (La. 1982); McCoy v. Arkansas Natural Gas Co., 175 La. 487, 143 So. 383 (1932)."
Coon v. Placid Oil Co., 493 So.2d 1236, 1240 (La.App. 3 Cir.1986).
Speculation that the Trans Am would have been worth less than prior to the accident if it had been repaired is too inconclusive to support an award for depreciation. Therefore, we hold that Romco, Inc. is not entitled to an award for depreciation.

LOSS OF USE
The trial court found that Allen's claim for eighty-six days for use of a rental vehicle was excessive and reduced his recovery to fifty days at a cost of $20 per day. Appellants contend that the recovery for use of a rental vehicle for fifty days is excessive insofar as the evidence established that the Trans Am could have been repaired in less than twenty-five days. We *235 agree that fifty days at $20 per day is an excessive award for loss of use, but do so for different reasons than those urged by appellants.
Damages for loss of use are measured by the rental cost of a substitute vehicle. See, Alexander v. Qwik Change Car Center, Inc., 352 So.2d 188 (La.1977). Insofar as Romco did not have the Trans Am repaired, the length of time necessary to complete the repair work is irrelevant.
"In cases where a wrecked vehicle is totally destroyed or its repair is not economically feasible, damages for loss of use are recoverable only for a reasonable time, that time period in which the owner becomes aware of the situation and secures a replacement therefor."
(Citations omitted)
O'Brian v. Allstate Ins. Co., 420 So.2d 1222, 1224, 1225 (La.App. 3 Cir.1982).
In the present case, Romco and Allen decided not to repair the vehicle, presumably because they did not consider its repair economically feasible, or for whatever reason. Therefore, damages for loss of use are restricted to that period of time in which the owner, or in this case the lessee, became aware of the situation and could secure a replacement.
Allen testified that he knew that he did not want the Trans Am repaired when he saw it the day after the accident. Robert Trahan, testifying on behalf of Romco, testified that Romco acquired bids on the vehicle before deciding whether or not to repair it. The bid from Lafayette Motor Company, Inc., who acquired the vehicle from Romco, is dated May 29, 1985. There is no reasonable explanation as to why seventy-nine days were necessary after the time of the accident to obtain bids, or to make a decision as to whether to sell or repair the car. It is significant that neither Allen nor Romco obtained any damage estimates as to the cost of repairing the Trans Am or ever had any intention to do so. We find that a period of thirty days was a reasonable time period for appellants to become aware of the situation and secure a replacement. At the rate of $20 per day, Allen is entitled to an award of $600.00 for loss of use.

CONCLUSION
Based upon the foregoing, the judgment of the trial court is amended to reduce judgment in favor of Romco, Inc. to $3,220.28, the total cost of repairs to the Trans Am; the judgment of the trial court is further amended to reduce judgment in favor of Wesley J. Allen to $600.00 for loss of use of the Trans Am.
Costs of this appeal are assessed to plaintiffs-appellees.
AFFIRMED, AS AMENDED.
NOTES
[1] Louisiana Motors, Inc. was dismissed on November 4, 1986.